NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-3846 and 09-3948
_____

DAVID G. HAYDUK,

Appellant, No. 09-3846

v.

CITY OF JOHNSTOWN;
JEFFREY F. SILKA, individually and in his capacity as City Manager,

Appellants, No. 09-3948
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 3-05-cv-00294)
District Judge:  Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 24, 2010

Before:  SMITH, FISHER and GREENBERG, *Circuit Judges*.

(Filed: July 2, 2010)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Plaintiff David Hayduk appeals from a judgment of the District Court following an unfavorable jury verdict. Defendants City of Johnstown, Pennsylvania, and City Manager Jeffrey Silka have filed a cross-appeal. We will affirm the District Court's judgment and dismiss the Defendants' cross-appeal.

**I.**

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Hayduk was employed by the City of Johnstown as a residential housing rehabilitation specialist. He missed work on August 29, 2003, as well as several other days during that month. On September 4, 2003, Hayduk was called to a meeting with Silka, Assistant City Manager Curtis Davis, and Ronald Andrews, Hayduk's immediate supervisor. Hayduk was told that if his attendance did not improve he would be placed on part-time status or discharged. Hayduk responded that his absences were due to legitimate medical conditions. Silka drafted an "action plan," which required Hayduk to call in sick and to provide a doctor's note whenever he missed work on account of illness. Hayduk reported to work on September 5 but, while working outside the office, fainted and went home. He went to the hospital the next morning and remained there until September 7. Hayduk himself did not immediately relay this incident or his whereabouts to his superiors, but his girlfriend left a message on Davis' voice mail notifying him of

2

Hayduk's hospital stay. Hayduk next reported to work on September 9 and filled out an accident report for the September 5 episode. That morning, Silka, Andrews, and Davis convened another meeting with Hayduk and reassigned him to an administrative position until further notice. At the end of the next day, Silka terminated Hayduk due to, among other things, his failure to report to work on September 5 and his pattern of absences throughout August 2003. Hayduk subsequently requested reinstatement but was refused.

In June 2005, Hayduk filed this lawsuit in the Western District of Pennsylvania against the City and Silka, alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and 42 U.S.C. § 1983. Discovery ensued, followed by cross-motions for summary judgment. In June 2008, the District Court ruled on the parties' respective motions, whittling down the issues for trial. *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429 (W.D. Pa. 2008). As relevant here, the Court interpreted Hayduk's FMLA claim, insofar as it was premised on his allegedly unlawful termination, as a retaliation claim instead of as an interference claim, and deferred resolution of a portion of that claim for trial. The Court also ruled that Hayduk had established as a matter of law that he gave the Defendants sufficient notice of his need for FMLA leave for his absences on August 29 and September 5.

The case was tried to a jury in June 2009. After the close of evidence, the District Court informed the parties that it would submit to the jury the question whether Hayduk gave the Defendants sufficient notice of his need for FMLA leave on August 29 and September 5 despite its earlier ruling that Hayduk had established notice for those two

3

dates as a matter of law. Neither party objected. In relevant part, the jury found that Hayduk failed to prove that he had a serious health condition on August 29 or that he gave sufficient notice to the Defendants of his need for FMLA leave on September 5. Because the jury determined that these essential elements of Hayduk's FMLA claim were lacking, it effectively found that the Defendants were not liable to Hayduk; the verdict was therefore entirely favorable to the Defendants.

Hayduk thereafter moved for judgment as a matter of law or, in the alternative, for a new trial, arguing, as relevant here, that there was insufficient evidence to support the jury's notice finding and that the District Court's submission of the notice question to the jury was error in light of its summary judgment ruling. The Defendants opposed that motion and separately filed a "contingent" motion for judgment as a matter of law. The District Court denied Hayduk's motion, reasoning that there was sufficient evidence to support the jury's verdict, and either that the Court's submission of the notice question was not improper or that Hayduk had waived his right to object. Given its denial of Hayduk's motion, the Court summarily denied the Defendants' contingent motion as moot and entered judgment in their favor. Both parties have timely appealed.[1]

---

[1]The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291. "We review the District Court's decision denying a motion for judgment as a matter of law *de novo*, and apply the same standard that the District Court did, namely whether, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Eddy v. V.I. Water & Power Auth.*, 369 F.3d 227, 230 (3d Cir. 2004) (quotation marks and citation omitted). "The standard of review on a motion for a new trial is abuse of discretion,

## II.

### A.      Hayduk's Appeal

As we understand his brief, Hayduk essentially raises three main issues for our review.[2]  First, he argues that the District Court erred in construing his FMLA claim as one for retaliation and not as one for interference.  Second, he contends that the District Court erred in submitting the notice question to the jury.  And third, he claims that there was insufficient evidence to support the jury's finding that he did not give the Defendants adequate notice of his need for FMLA leave.

### 1.      Interpretation of the FMLA Claim

Congress promulgated the FMLA in 1993 to accommodate "the important societal interest in assisting families[] by establishing a minimum labor standard for leave." *Churchill v. Star Enters.*, 183 F.3d 184, 192 (3d Cir. 1999) (quoting S. Rep. No. 103-3 at 4, 1993 U.S.S.C.A.N. at 6-7).  To protect that interest, the FMLA contains two distinct provisions. *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).  First, it makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA.  29 U.S.C. § 2615(a)(1).  A

---

except where a district court bases its denial of the motion on an application of law, in which case an appellate court's review is plenary." *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009) (citation omitted).

[2]Although the argument portion of Hayduk's brief is separated into only two sections, it is clear to us that he in fact is advancing three distinct, albeit interrelated, issues.

claim arising under that provision is known as an "interference" claim. *Callison*, 430

F.3d at 119. Second, the FMLA makes it "unlawful for any employer to discharge or in

any other manner discriminate against any individual for opposing any practice made

unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). A claim under that provision is

referred to as a "retaliation" or a "discrimination" claim. *Callison*, 430 F.3d at 119.

In its summary judgment ruling, the District Court reviewed the types of relief

available under the FMLA and, based on a decision by the same District Judge in a

different case, concluded that "in the Third Circuit claims for wrongful termination under

the FMLA must be treated as discrimination or retaliation claims." *Hayduk*, 580 F. Supp.

2d at 458 n.18 (citation omitted). The District Court then considered Hayduk's complaint

and, noting his allegation that he had been unlawfully discharged, reiterated that "an

action alleging termination for the exercise of rights granted by the FMLA is treated in

the Third Circuit as a case of discrimination," and therefore elected to analyze his "claim

as one of discrimination rather than interference." *Id.* at 471-72. After the District

Court's summary judgment ruling and the trial of this case, we clarified that an employee

alleging a discharge in violation of the FMLA may proceed under both theories of

recovery. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (holding

that "firing an employee for a valid request for FMLA leave may constitute interference

with the employee's FMLA rights as well as retaliation against the employee" (footnote

omitted)). In light of *Erdman*, we will assume for the sake of argument that Hayduk is

correct that the District Court improperly restricted him to a single theory of recovery to

6

the extent his FMLA claim was predicated on his allegedly unlawful termination. That purported error is of no consequence here.

The two theories of recovery available under the FMLA require proof of different elements. To prove an interference claim, a plaintiff must show "[(1)] that he was entitled to benefits under the FMLA and [(2)] that his employer illegitimately prevented him from obtaining those benefits." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007). To prove a retaliation claim, a plaintiff must show that (1) he invoked his right to FMLA benefits, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his invocation of his rights. *See Erdman*, 582 F.3d at 509; *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). These differences notwithstanding, the first elements of both theories are essentially identical: a plaintiff pressing either theory must establish, among other things, that he had a right to FMLA benefits. To that end, the plaintiff must demonstrate that he gave his employer adequate notice of his need for FMLA leave. *See* 29 C.F.R. §§ 825.302-.303; *see also Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir. 1997) ("FMLA regulations require employees to provide adequate notice to their employers of the need to take leave." (citation omitted)).

The viability of Hayduk's FMLA claim, then, whether it was characterized as an interference claim or a retaliation claim, or both, hinged in part on whether he could prove that he provided notice to the Defendants that he intended to take or had taken FMLA leave. Put another way – and as Hayduk implicitly acknowledges in his brief, (*see*

7

Appellant's Br. 21) – the only pivotal question is one of notice. Significantly, that question was put to the jury and the jury answered it in the negative. For the reasons discussed below, we perceive no reason to upset that finding. Accordingly, Hayduk has no warrant to complain and we decline to disturb the District Court's judgment on this ground.

## 2. Submission of the Notice Question

In its summary judgment ruling, the District Court concluded, as a matter of law, that Hayduk had given the Defendants adequate notice of his need for FMLA leave on August 29 and September 5. After the close of evidence but before the jury charge, the District Court informed the parties that its conclusions in its summary judgment ruling "were made solely for the purposes [of] adjudicating the summary judgment motions" and that, in light of its review of this Court's pattern jury instructions, the question of notice was "more appropriately reserved for the jury's determination and analysis without undue restrictions." (App. 835.) Although the District Court welcomed questions from the parties, Hayduk's counsel said he had none and did not otherwise object to the jury charge or verdict form.

Under the Federal Rules of Civil Procedure, "[a] party may assign as error . . . an error in an instruction actually given, *if that party properly objected*[.]" Fed. R. Civ. P. 51(d)(1)(A); *see Alexander v. Riga*, 208 F.3d 419, 426-27 (3d Cir. 2000). Where, as here,

a party fails to object to an instruction, our review is limited to the plain-error standard.[3]

*See* Fed. R. Civ. P. 51(d)(2); *see also Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 359 (3d Cir. 2005). Under that standard, "we consider, *inter alia*, the obviousness of the error, the significance of the interest involved, and the reputation of judicial proceedings if the error stands uncorrected." *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 340-41 (3d Cir. 2005) (internal quotation marks and citations omitted). We will reverse under the plain-error standard only if there was: (1) an error; (2) that was plain; and (3) that affected substantial rights. *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 166-67 (3d Cir. 2004). "Plain error review is discretionary – it should be exercised sparingly and should only be invoked with extreme caution in the civil context." *Franklin Prescriptions*, 424 F.3d at 341 (internal quotation marks and citation omitted).

The Federal Rules of Civil Procedure provide that if summary judgment is entered on less than an entire case and a trial on the remaining claims is required, a court "should

---

[3]Relying on *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217 (3d Cir. 2007), Hayduk maintains that he did not waive his right to object. In *LeBoon*, which involved a factual and legal context quite distinct from the one presented here, we homed in on the difference between the doctrines of waiver and forfeiture. *See id.* at 225. While "waiver" and "forfeiture" are not the same, *see United States v. Olano*, 507 U.S. 725, 733-34 (1993), courts "have so often used them interchangeably that it may be too late to introduce precision," *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring in part and concurring in the judgment). Thus, even assuming that Hayduk is technically correct that he did not "waive" his right to object, *cf. Nara v. Frank*, 488 F.3d 187, 196 (3d Cir. 2007) ("Failing to timely assert a right results in forfeiture, which permits plain error review. . . . Waiver, on the other hand, extinguishes any error." (citation omitted)), the precise label we ascribe to that omission is irrelevant. What matters is that Hayduk failed to object, and the record leaves no room for doubt that he failed to do so despite the District Court's express invitation.

. . . issue an order specifying what facts . . . are not genuinely at issue. *The facts so specified must be treated as established in the action*." Fed. R. Civ. P. 56(d)(1) (emphasis added). Under the rule, then, the District Court's conclusion that there was no question that Hayduk had given the Defendants notice for his August 29 and September 5 absences was "established" for purposes of this case. *See Singh v. George Washington Univ. Sch. of Med. & Health Scis.*, 508 F.3d 1097, 1106 (D.C. Cir. 2007) ("Facts found on partial summary judgment are taken as established at trial." (citation omitted)); *cf. Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 n.9 (9th Cir. 2009) (district court properly granted summary judgment on one element of plaintiff's claim not subject to genuine dispute but held a trial on the other elements).

It is true, as the District Court recognized, that a judge retains the power to modify or reopen a partial summary judgment ruling. *See* Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims . . . ."). "However, if the judge 'subsequently changes the initial ruling and broadens the scope of trial, the judge must inform the parties and give them an opportunity to present evidence relating to the newly revived issue.'" *Alberty-Velez v. Corporacion de P.R. Para la Diffusion Publica*, 242 F.3d 418, 422 (1st Cir. 2001) (quoting *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 386 (2d Cir. 1989)); *accord Huss v. King Co.*, 338 F.3d 647, 650-51 (6th Cir. 2003). Indeed, a judge's "reopening of . . . an issue without notice to the parties is error, and reversible error if it causes substantial prejudice." *Singh*, 508 F.3d at 1106 (citing *Leddy*, 875 F.2d at 386-87).

10

Applying these principles here, we conclude that the District Court committed error and that its error was plain. The Court expressly concluded in its summary judgment ruling that there was no genuine question of material fact as to notice on two relevant dates. The parties were therefore entitled to rely on that determination when preparing their trial strategies. *See Leddy*, 875 F.2d at 386 ("Once a district judge issues a partial summary judgment order removing certain claims from a case, the parties have a right to rely on the ruling by forbearing from introducing any evidence or cross-examining witnesses in regard to those claims."). And the record makes plain that Hayduk did in fact so rely and was not given an additional opportunity to present evidence on this newly revived issue.[4]

Because the District Court committed plain error, the question remains whether Hayduk's substantial rights were prejudiced. He alone shoulders the burden of showing as much. *See Virgin Islands v. Rosa*, 399 F.3d 283, 293 (3d Cir. 2005). Because the jury found that Hayduk failed to prove that he had a serious health condition on August 29, it did not answer the question whether he proved notice as to that date. The jury did find, however, that Hayduk proved that he had a serious health condition on September 5 and proceeded to find that he did not prove notice as to that date. Given these circumstances, the only question here is whether Hayduk can show that he was prejudiced by the District

---

[4]Hayduk's understanding that he was not obligated to prove notice as to August 29 and September 5 because of the District Court's summary judgment ruling was clearly reflected in his opening statement as well as his proposed jury instructions and verdict form.

Court's course of action as it related to notice for September 5. He has fallen far short of that mark.

A juxtaposition of Hayduk's proffers at both summary judgment and trial reflect substantial, if not complete, overlap. At both stages, Hayduk presented more or less the same witness testimony (e.g., his own as well as his supervisors') and documentary evidence (e.g., a report about the September 5 incident, Silka's written reprimand, and a summary of the September 9 meeting). Furthermore, Hayduk nowhere even obliquely intimates that he withheld at trial any testimony or evidence that he had submitted at summary judgment. In other words, everything Hayduk could have introduced at trial to prove that he gave notice to the Defendants of his need for FMLA leave on September 5 was in fact introduced at trial. Accordingly, Hayduk's claim in this vein fails because he has not demonstrated how the outcome of the trial would have been different absent the District Court's error. *See*, *e.g.*, *Leddy*, 875 F.2d at 386-87; *cf. Alberty-Velez*, 242 F.3d at 423-25.

### 3. Sufficiency of the Evidence

The FMLA's implementing regulations impose certain notice obligations on employees. For "unforeseeable FMLA leave," the regulations in force at the time the events giving rise to this lawsuit took place provided that "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a) (2003 ed.). That regulation further stated that "[i]t is expected that an employee will give notice to the

12

employer *within no more than one or two working days* of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." *Id.* (emphasis added). The former regulations did not require that an employee's notice to the employer contain any particular content, and instead provided only that "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." *Id.* § 825.303(b). The District Court read these very principles to the jury in its charge.

Hayduk's evidence as to notice for September 5 basically amounted to testimony from both himself and his supervisors that he told them at the September 9 meeting that he had fainted on September 5 and gone to the hospital on September 6, as well as reports relating the events of both dates. We cannot know why the jury found this evidence inadequate, *cf. Riley v. K Mart Corp.*, 864 F.2d 1049, 1054 (3d Cir. 1988) ("[A] court will not ordinarily inquire into a jury's thought processes . . . ."), but there is certainly nothing in the record that would have compelled the jury to reach a different verdict, especially given the rather amorphous standards in the regulations. It may be that the jury found that the message left by Hayduk's girlfriend on Davis' voice mail did not convey sufficient information to the Defendants. Or, even assuming the content of that message were sufficient to trigger the FMLA's protections, the jury may have determined that Hayduk did not give notice "as soon as practicable under the facts and circumstances of th[is] particular case." Considering that Hayduk made those statements only after the Defendants convened that meeting – which took place four days after the incident and

13

three days after Hayduk's discharge from the hospital – we do not view this finding as unsustainable. *See*, *e.g.*, *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 424 (6th Cir. 2004).

All this to say that Hayduk's evidence was arguably sufficient for the jury to find that he gave the Defendants' sufficient notice. *See*, *e.g.*, *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950, 953 (7th Cir. 2004). But just because that evidence may have been sufficient to support a jury finding in Hayduk's favor does not mean that it necessarily required as much. *See Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 813 (6th Cir. 1996) ("To say that the evidence is sufficient to create a jury question does not mean, of course, that a jury will ultimately find [for one party or the other] when the case is submitted to the jury." (citations omitted)). In short, under the highly deferential standard of review we owe the jury's verdict, we cannot hold that "the record is critically deficient of that minimum quantity of evidence from which [the] jury might reasonably" have found that Hayduk did not give adequate notice to the Defendants as to his September 5 absence. *Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 656 (3d Cir. 1989) (quotation marks and citation omitted).

## B.     The Defendants' Cross-Appeal

Because Hayduk has advanced no persuasive ground for upsetting the District Court's judgment, we need not reach the merits of the Defendants' cross-appeal. *See Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 187 n.2 (3d Cir. 2008); *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 199 n.22 (3d Cir. 1984). We note, in any

14

event, that the Defendants prevailed in full before the District Court and that a prevailing party ordinarily may not appeal a judgment in its favor for lack of standing. *See*, *e.g.*, *Lindheimer v. Ill. Bell Tel. Co.*, 292 U.S. 151, 176 (1934); *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603 (5th Cir. 2004); *Cochran v. M. & M. Transp. Co.*, 110 F.2d 519, 522 (1st Cir. 1940). Thus, because the Defendants were in no way aggrieved by the judgment of the District Court, their cross-appeal must be dismissed for lack of jurisdiction. *See Armotek Indus., Inc. v. Employers Ins. of Wassau*, 952 F.2d 756, 759 n.3 (3d Cir. 1991).

## III.

For the foregoing reasons, we will affirm the District Court's judgment and dismiss the Defendants' cross-appeal.