NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2639
_____

DENISE PELLEGRINO,
Appellant

v.

COMMUNICATIONS WORKERS OF AMERICA,
AFL-CIO, CLC, a labor union

_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 2-10-cv-00098)
District Judge:  Honorable Gary L. Lancaster
_____

Submitted Under Third Circuit LAR 34.1(a)
April 18, 2012
_____

Before:  SCIRICA, AMBRO and FISHER, Circuit Judges

(Opinion filed: April 19, 2012 )
_____

OPINION
_____

AMBRO, Circuit Judge

Denise Pellegrino claims that her former employer, Communications Workers of

America ("CWA"), interfered with her rights under the Family and Medical Leave Act of

1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*. The District Court entered summary judgment for CWA, and Pellegrino has appealed. For the reasons set forth below, we affirm.

## I.    Background

Pellegrino began employment with CWA in 2005. She was given an employment manual with copies of the then-current policies regarding FMLA leave and sick leave. Federal law required CWA to provide FMLA leave (which is unpaid) to eligible employees. *See* 29 U.S.C. § 2612(a)(1), (d)(1). It did not require CWA to provide paid sick leave. Neither the FMLA policy nor the sick leave policy restricted the travel of employees on leave.

In 2006, CWA promulgated a new employment manual. The manual included a revised Sickness and Absenteeism Policy (the "2006 Policy") that addressed both FMLA leave and sick leave, though in separate sections. The sick leave section of the 2006 Policy required that employees on paid sick leave "remain in the immediate vicinity of their home during the period of such a leave." J.A. 176. It permitted exceptions to this rule if employees so requested in writing before their travel. *Id.* The FMLA section of the 2006 Policy provided no such restriction. It stated, however, that FMLA leave would run concurrently with any paid sick leave. *Id.* at 177.

Affected CWA employees received the 2006 Policy in an email. It instructed employees that if the 2006 Policy differed from earlier policies, it superseded those policies to the extent of those differences. Pellegrino stated at her deposition that she did not recall receiving the email about the 2006 Policy. *Id.* at 134. Email records, however, indicate that she was included among the recipients. *Id.* at 133-34.

2

In August 2008, Pellegrino notified CWA that she needed to undergo surgery. CWA responded with a letter describing Pellegrino's rights and obligations under the FMLA. *See id.* at 268-69. In bold type, the letter stated that "the process of medical certification for FMLA leave is completely separate from the process for approving leaves for continued sick pay treatment under CWA's sick leave policy." *Id.* at 269. The letter enclosed two separate medical certification forms, one for FMLA leave and the other for paid sick leave. Another enclosure, Department of Labor Form WH-381, stated in large type: "You will be required to substitute paid leave under CWA's sick leave policy for the period of time that you qualify for such benefits." *Id.* at 270. The letter did not, however, enclose the 2006 Policy or note its restriction on travel.

After Pellegrino submitted the required certifications, CWA granted her leave under the FMLA. *Id.* at 360. It was to begin on October 2, the date of her surgery, and last at least four weeks. *See id.* at 39, 76, 360. During this time, Pellegrino received her full salary and benefits, as CWA required that paid sick leave run concurrently with FMLA leave. *See id.* at 131-32. About two weeks after the surgery, she and three acquaintances traveled to Cancun, Mexico, where they spent a week. She did not notify CWA of her trip.

When Pellegrino returned from Cancun, CWA requested that she come to the office for a meeting on November 3, while she was still on leave. She agreed. At the meeting, the administrative director of Pellegrino's office asked her if she had traveled while on leave, and she conceded that she had. Later that day, CWA sent Pellegrino a letter terminating her employment because she had violated CWA's sick leave policy.

3

Pellegrino filed this suit in the District Court for the Western District of Pennsylvania in January 2010. After discovery, CWA moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. The District Court granted its motion, and this timely appeal followed.

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction under 29 U.S.C. § 2617(a)(2). We have jurisdiction pursuant to 28 U.S.C. § 1291.

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a motion for summary judgment, the district court must view the facts in the light most favorable to the non-moving party. However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (*en banc*) (emphasis, citations, and internal quotation marks omitted). Our review of the District Court's grant of summary judgment is plenary. *Sloan & Co. v. Liberty Mut. Ins. Co.*, 653 F.3d 175, 179 (3d Cir. 2011).

## III.    Discussion

### A.     Notice

Pellegrino's principal argument on appeal is that CWA did not provide her sufficient notice of its policy against travel during sick leave and the consequence of termination. She argues that a genuine issue of material fact exists as to whether she received the 2006 Policy. Further, she objects that, even if she received the 2006 Policy,

4

it did not state that employees could be terminated for violating its travel prohibition. She is able to invoke the FMLA because her termination occurred during both sick leave and FMLA leave.

Pellegrino has asserted an "interference" claim (as opposed to a more burdensome "retaliation" or "discrimination" claim) under the FMLA. The interference provision states: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). "In order to assert a claim of interference, an employee must show that [s]he was entitled to benefits under the FMLA and that [her] employer illegitimately prevented [her] from obtaining those benefits." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007).

"'[E]very discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights.'" *Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008) (quoting *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005)). However, "an employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences, *even if the absences that the employee failed to report were protected by the FMLA*." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008-09 (10th Cir. 2011) (emphasis in original). That is because taking FMLA leave generally does not affect an employee's obligations under non-FMLA company policy. *See id.* at 1006-07.

Here, Pellegrino was on both FMLA leave and paid sick leave, as the law allows. *See* 29 U.S.C. § 2612(d)(2); *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199,

5

1204-06 (11th Cir. 2001). Therefore, she remained bound by CWA's sick leave policy so long as it was not inconsistent with the FMLA. "[T]he only issue . . . is whether [CWA] denied [Pellegrino] of [her] entitlements under the FMLA by enforcing its own sick leave policies against [her] while [s]he was on leave." *Callison v. City of Phila.*, 430 F.3d 117, 120 (3d Cir. 2005); *see also Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 161 (2d Cir. 2011) ("[A] company may discipline an employee for violating its internal leave policy as long as that policy is consistent with the law . . . .").

CWA's sick leave policy was not inconsistent with the FMLA; hence, CWA did not interfere with Pellegrino's FMLA rights by enforcing it against her. The sick leave policy "merely sets forth obligations of employees who are on leave, regardless of whether the leave is pursuant to the FMLA." *Callison*, 430 F.3d at 120. "Nothing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave . . . ." *Id.* at 121. Indeed, in *Callison* we approved a city government's policy that required employees to call the city each time they came and went from their homes during leave. *See id.* at 120-21. If that policy is consistent with the FMLA, then a policy that forbids vacations during paid sick leave also is consistent with the FMLA.

Pellegrino protests that, when an employee requests FMLA leave, "[t]he employer shall also provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any *consequences* of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1) (2008) (emphasis added); *see also Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 142-45 (3d Cir. 2004) (discussing this

6

provision).[1] To repeat, she asserts that she never received the 2006 Policy, and if she did, it did not explain that she could be terminated for travel during leave. Pellegrino did, however, receive a notice of her obligations *under the FMLA*. The Department of Labor provides Form WH-381, which she received, as a standard notice that satisfies the regulation's requirements. *See Neel v. Mid-Atl. of Fairfield, LLC*, 778 F. Supp. 2d 593, 603 (D. Md. 2011) ("[T]his Court agrees that WH-381 suffices as notice under section 825.300(c)."). Those requirements, which the regulation enumerates, are specific to the FMLA. *See* 29 C.F.R. § 825.301(b)(1)(i)-(viii) (2008). It and its regulations are silent as to what, if any, notice an employee must receive about corporate paid sick leave policies. *See Bacon*, 550 F.3d at 715-16.

Thus, viewing the facts in the light most favorable to Pellegrino, we agree with the District Court that CWA did not interfere with her rights under the FMLA.

## B. Spoliation of Evidence

Pellegrino also contends that the District Court improperly ignored a CWA employee's spoliation of evidence. She asserts that the CWA employee learned of her travels from a union member who worked at the Pittsburgh airport, then destroyed a document that the union member had provided. That alleged spoliation, Pellegrino continues, undermines the credibility of the CWA employee. The testimony of that employee, however, is not necessary to our analysis. The sick leave policy, CWA's

---

[1] We quote the regulation that was in force when Pellegrino took her leave. Since then, it has been slightly reworded and recodified at 29 C.F.R. § 825.300(c)(1). *See* Family and Medical Leave Act of 1993, Effectiveness of Information Collection Requirements, 74 Fed. Reg. 2862 (Jan. 16, 2009).

7

disclosures, and Pellegrino's testimony and travel records are sufficient. We may conclude that CWA did not interfere with Pellegrino's FMLA rights without relying in any way on that testimony. Thus, the alleged spoliation does not render summary judgment improper.

### C. At-Will Employment

Finally, Pellegrino briefly argues that the District Court erred in stating that she was an at-will employee. On appeal, CWA concedes that the District Court's statement was in error. However, it argues that the error is immaterial, as Pellegrino's collective bargaining agreement (she was a member of the Office and Professional Employees International Union) does not preclude termination in this context. CWA's sick leave policy states that it governs unless it is inconsistent with an employee's collective bargaining agreement, and Pellegrino's collective bargaining agreement is silent as to travel during sick leave. We therefore agree with CWA that the error was immaterial to the FMLA claim before us.

\* \* \* \* \*

Though Pellegrino's termination appears harsh, the FMLA is not a law that remedies her failure to abide by CWA's sick leave policy. Thus, we affirm the District Court's grant of summary judgment.